October 20, 2006

Christie Law Group, PLLC
2100 Westlake Avenue N Suite 206
Seattle, WA 98109

    Re: Wood and Karlsvik v. Kitsap County, et al,;
        U.S. District Court Cause No. C05-5575RBL.

Dear Mr. Rosen:

    Pursuant to our conversations I have reviewed the reports and other documents associated with the above District Court Cause number and these documents along with my training and experience are the basis for my conclusions and opinion in this matter. I have attached an affidavit which introduces me and describes my training, experience and qualifications.

    Specifically, I have reviewed selected testimony of Mr. Wood, reports of the warrant execution, photographs of the marihuana grow and a copy of the note Mr. Wood offered police as justification for medical use of marihuana.

    Mr. Wood states that his consumption of marihuana consists of making a tea with about a tablespoon of marihuana. Mr. Wood says that he does not use marihuana every day and that his condition is sporadic. Mr. Wood says that when he does need marihuana on a continual basis he may use it daily for as long a period as 60-90 days.

    State law allows for individuals with certain medical conditions to use marihuana and places certain restrictions on that use; among those restrictions the law requires the user to provide a medical authorization to Law enforcement showing the physician has counseled the patient regarding the risks associated with marihuana use and the Court has determined that the Doctor must be licensed in Washington State.

    In this case:
1. Mr. Wood was found to be in possession of 36 marihuana plants and a quantity of processed or dried marihuana.
2. The U.S. Drug Enforcement Administration (DEA) teaches Law Enforcement Officers' that the average yield per marihuana plant is approximately one pound.
3. The U.S. Federal Sentencing Guidelines states in part that one marihuana plant is equal to one hundred grams. Therefore the 36 marihuana plants in this case would either equate to 36 pounds of marihuana using the DEA standard or 3600 grams using the U.S Federal Sentencing standard.
4. Mr. Wood says he uses about a tablespoon of marihuana per day when he needs it and makes it clear that he does not use it every day.

5. Using marihuana seized and tested from an unrelated case I filled a tablespoon and determined that the weight of a tablespoon of marihuana (spoon weight not included) is 3.1 grams. I did this using an Ohaus "scout" model digital scale.
6. 3.1 grams X 60 days equals 186 grams.

It is my opinion that a 60-day supply of marihuana for Mr. Wood is 186 grams and that anything more than 186 grams would violate Washington State Law. Based on my experience the plants found on Mr. Wood's property are of average size and volume for an outdoor grow. Presuming their yield is on the lower end of the suggested yield, i.e. 3600 grams, Mr. Woods had 19 times the allowable amount. Assuming the yield was on the higher end, 36 pounds (or 16,243 grams), Mr. Woods had 87 times the allowable supply. Based on his stated dosage, Mr. Woods had enough marihuana to provide a daily supply for anywhere between approximately 3.18 years and 14.35 years. Based on even the most conservative yield estimates, Mr. Wood was clearly in violation of the laws allowing one to grow or possess only a 60-day supply.

As part of my qualifications, I am the author of the Medical Marihuana standards for Kitsap County and was tasked with developing these standards in 2002 through the Kitsap County Prosecutors' Office. These Medical Marihuana Guideline's have been distributed to other Law Enforcement Organizations and Prosecutors' Office's through the State Attorney General's Office.

Below are photographs documenting the process by which I weighed the marihuana:


Scale calibrated to zero


Scale with empty spoon


Tablespoon of Marihuana

All work I perform on this case will be done at my standard detective rate of pay. During the last four years, I have not testified as an expert in any cases.

Roy Alloway, Detective
Bremerton Police Department
West Sound Narcotics' Enforcement Team

Affidavit A

I, Roy Alloway, being first duly sworn upon my oath, depose and state: I am a commissioned Police Officer for the City of Bremerton. I am also a commissioned Deputy Sheriff in the County of Kitsap, State of Washington and presently hold the rank of Master Police Officer / Detective.

I am currently assigned as a Narcotics Detective with the West Sound Narcotics Enforcement Team ("WestNET") From December 1984 through January 1986 I was assigned as a Narcotics Detective for the Bremerton Police Departments Special Investigations Unit.

I have been employed as a Police Officer with the City of Bremerton since 1978. I have attended the Basic Law Enforcement Academy at the Washington State Criminal Justice Training Center in Burien, Washington, where I received instruction in Law Enforcement to include drug identification, trafficking and drug paraphernalia, for my duties as a Police Officer.

I have attended Olympic College, the Administration of Justice program. I have attended the U.S. Air Force Community College and have a Certificate in Law Enforcement from Highline Community College in Midway Washington. I have 80-hours of Narcotics Investigation Training from the Federal Bureau of Investigation (FBI) in conjunction with the Drug Enforcement Administration (DEA), which I attended in June 1985. I have 48-hours of Drug Enforcement Training with the Washington State Criminal Justice Training Commission, which I attended in 1985.

In March 1990 I received 80-hours of training in Crime Scenes Investigations, from the Washington State Criminal Justice Training Commission, which included narcotics and clandestine laboratory investigation training.

In November 1991 I was certified as a Marihuana Leaf Identification Expert through the Washington State Patrol Crime Laboratory and conducted more than 400 tests where I identified marihuana. I obtained training and became certified in the use of the Becton Dickinson "NIK" field drug test kits, in1978, 1985 and 1999.

In February 1999 I attended the 80-hour Narcotics Investigator Training with the Drug Enforcement Administration (DEA). I attended the Western States Information Network (WSIN) training in June 1999 and again in June 2000, which included 48-hours of Narcotics training specific to Clandestine Methamphetamine Laboratories, Marihuana Grow Operations and Narcotics / Organized Crime Trends in the United States.

In October 1999 I attended a RICO, Forfeiture and Money Laundering Conference given by the Washington State Attorney Generals' Office. In October 2000 I attended a 16-hour course specific to Indoor Marihuana Grow Operations, which was sponsored by the Pierce County Sheriffs Office and the Federal Drug Enforcement Administration.

In 2001 I attended the annual California Narcotics Officers Association Conference in Monterey California and learned more about Narcotics Trafficking Organizations, Organized Crime and Financial Crime Investigations.

In February 2001 I attended a 40-hour Clandestine Drug Laboratory Safety & Operations Course, which was presented by Cadre Inc. In June 2002 I attended a 40-hour Clandestine Laboratory Investigation / Safety Certification Program at the DEA Academy in Quantico Virginia, in this course I learned how to manufacture

methamphetamine and did manufacture methamphetamine using both the Anhydrous Ammonia and Red Phosphorus methods of manufacture.

In January 2004 I completed a course in Hazardous Materials On-Scene Command with the State of Washington Fire Marshall's Office in conjunction with the Washington State Patrol.

In March 2004 I completed a course on Electronic Surveillance given by Orion Electronics Limited at the Department of Public Safety in Carson City Nevada. In this course I learned about new technology and how that technology can be used in Criminal Investigations.

In September 2004 I attended an Advanced Thermographer course given by the Law Enforcement Thermographers' Association in Austin Texas. In this course I learned about structural profiles, theft from public utilities, heat signatures and technology with respect to Thermal Imagery and its uses in Law Enforcement.

In November 2004 I attended the California Narcotic's Officers Association Conference in San Diego and received updated training in Narcotics Investigations, Money Laundering, Financial Investigations and Terrorism information for Law Enforcement.

I have attended numerous training courses between 1978 through 2004 and have more than 2150 hours of Law Enforcement training with more than 450 hours specific to Narcotics and Financial Investigations.

These training courses have been provided through The Washington State Criminal Justice Training Commission, Washington State Narcotics Investigators Association, The Federal Bureau of Investigation (FBI), The Drug Enforcement Administration (DEA), The Washington State Attorney General's Office, Cadre Inc., Orion Electronics, The Law Enforcement Thermographers Association, The Washington State Patrol, The Washington State Fire Marshall, The Nevada State Department of Public Safety, The Texas Department of Public Safety, The California Department of Justice, The California Narcotics Officers Association and the Western States Information Network.

In these various courses, I have learned about the drug trade in greater depth and detail. These classes and the academy included in depth information about the use of informants, working as an undercover officer, drug identification, packaging, paraphernalia, language, physiological and pharmacological aspects of drugs and the operation of the higher-level drug businesses to include organized crime, money laundering and related activities.

I have also participated in drug investigations involving the purchase of marihuana, methamphetamine, lysergic acid diethylamide (LSD), black tar heroin, cocaine, crack cocaine, schedule III prescription drugs and legend drugs. I am familiar with drug language, use, packaging, marketing and consumption.

I have been exposed to the odors associated with heroin, methamphetamine laboratories and marihuana on hundreds of occasions. I have successfully identified marihuana by its odor both dried and growing on more than three hundred occasions.

Following my detecting the odors associated with methamphetamine labs and marihuana, both growing and dried, I have used this information to obtain search warrants on numerous occasions which have been served in Kitsap, Mason, Snohomish, Grays Harbor, Jefferson, Thurston, King and Pierce Counties.

I have assisted in the execution of hundreds of search warrants to include narcotics search warrants, which have resulted in the seizure of illegal narcotics and related equipment. I have been the affiant on numerous search warrants during my twenty-eight years in Law Enforcement.

**I certify (declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct. (RCW 9A.72.085)**

_____          _____
Detective Roy Alloway #435                        Date / Location:  10-20-06 Bremerton
Police Department / West Sound Narcotics Enforcement Team