HONORABLE RONALD B. LEIGHTON

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| DOUGLAS WOOD and SANDRA KARLSVIK, husband and wife,<br><br>                      Plaintiffs,<br><br>       v.<br><br>KITSAP COUNTY; WEST SOUND NARCOTICS ENFORCEMENT TEAM; OFFICER MATTHEW DOUGIL (WestNet); GIG HARBOR POLICE DEPARTMENT DETECTIVE JOHN DOE SCHUSTER (WestNET) DETECTIVE JOHN HALSTED (POULSBO POLICE DEPT, WestNET, Badge #606); DETECTIVE G.R. MARS (WSP STATEWIDE INCIDENT RESPONSE TEAM, Badge #685); DETECTIVE JOHN DOE WILSON and JOHN DOES 1-25<br><br>                      Defendants. | NO.  C05-5575RBL<br><br>WASHINGTON STATE PATROL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT<br><br>NOTE FOR HEARING: DECEMBER  8, 2006<br><br>ORAL ARGUMENT REQUESTED |

**COMES NOW** all Washington State defendants (WSP Defendants) including, but not limited to, Washington State Patrol Trooper George R. Mars and Detective Orest Wilson, and submit this Memorandum of Authorities in support of their pending Motion for Summary Judgment.

---

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT NO. C05-5575RBL

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

## I.
## STATEMENT OF THE CASE

This is an action alleging an unlawful search of a residence on September 5, 2002, pursuant to a search warrant. Plaintiff alleges property damage, injury to their dog, inability to obtain homeowner's liability insurance, and severe emotional distress.

## II.
## STATEMENT OF FACTS

WSP Defendants concur with the following statement of facts contained in the Memorandum of Authorities submitted in support of the presently pending Motion for Summary Judgment of Defendants Schuster, Dougil, and Halsted:

The plaintiffs, Douglas Wood and his wife, Sandra Karlsvik, are residents of Fox Island, Pierce County, Washington. Their address on Fox Island is 1225 11th Ave E.

The West Sound Narcotics Enforcement Team ("WestNET") is a multi-jurisdictional drug task force designed to centralize supervision and enhance the efforts of law enforcement agencies to combat controlled substance trafficking. The task force was created by agreement of the counties of Kitsap and Mason, the cities of Bainbridge Island, Bremerton, Port Orchard, Poulsbo, Shelton, the Washington State Patrol, and the Naval Criminal Investigation Services. Personnel from the task force are drawn from police personnel of the various participating agencies. The defendants were all participating in a WestNET task force at the time of plaintiff Douglas Wood's arrest.[1]

Based upon tips, research into property ownership, a flyover on August 27, 2002, at 1517 hours where marijuana growing upon the subject premises was observed, and other evidence available to WestNET personnel, City of Poulsbo Police Department Detective Halsted obtained

---

[1] WestNET itself is not a legal entity, and is not subject to suit.

WSP DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT
NO. C05-5575RBL

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

a Kitsap County Superior Court search warrant for 1215 11th Avenue, Fox Island, Washington.

Apparently, due to a number of perceived hazards to law enforcement personnel who might be called upon to serve a warrant on the plaintiffs' property, Detective Halsted contacted the Washington State Patrol SIRT Team and requested their assistance in serving the search warrant on plaintiff. Refer to Gig Harbor Defendants' Declaration of Detective John Halsted. The SIRT Team accepted the mission, and Detective Halsted gave the information pertaining to the warrant to WSP Detective Mars. WSP Detective Mars made a safety plan for the warrant service, and conducted a briefing of involved personnel on September 5, 2002 at 5:00 a.m. at the Pierce County Fire Station No. 59.

According to the sworn investigative report prepared by WSP Detective G.R. Mars,[2] at approximately 0630 hours SIRT executed the warrant service at the residence. The residence sat down a long dirt driveway off of 11th Ave. A Pierce County Deputy, in a marked patrol car, followed the SIRT van down the driveway that led to the residence along with other perimeter personnel vehicles. SIRT members exited the vehicle and approached the residence on foot. As Detective Mars led the team toward the residence he noticed the occupant, later identified as Douglas E. Wood standing in a window on the main floor. Detective Wilson took up a position of over watch on WOOD as Detective Mars proceeded to the south end of the house where he observed a set of wooden stairs that led up to a small landing. As he approached the steps he noticed the wooden landing ended approximately 8 feet short of the doorway approximately 6 feet above the ground.

When the SIRT team realized that they were not going to be able to access that door, part

---

[2] Declaration of Jason Rosen, Exhibit A.

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO. C05-5575RBL

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

of the entry team moved to the basement door, which was located at the northwest corner of the house. The door was not a standard size door. It was approximately 8 feet high and approximately 3 feet wide. It was mounted flush to the exterior of the house and opened inward from right to left. It was mounted on an approximate 1 foot wooden door jam. SIRT was unable to gain access into the door after numerous attempts with the "Ram." Detective Mars attempted to gain access through a large glass window that was located next to the door. Again SIRT was unable to gain access due to a wood/metal covering over the window. As the main team was trying to gain access into the residence from the lower level, Detective Wilson was still communicating with Mr. Wood who was still standing in the window on the main floor. Detective Wilson was able to persuade Mr. Wood into lowering his "Draw Bridge" thus allowing access to his house. SIRT entered the residence and cleared it and found no other personnel.

SIRT members met three large growling dogs coming up the basement stairs as they were descending them. SIRT deployed several pepper balls on the lead dog in order to deter its aggressive approach. The pepper balls are deployed from a long gun that fires the projectile. Each SIRT member is trained in the use of this devise. SIRT implemented the use of the pepper ball gun several years ago as a less than lethal devise to use in the deterrence of an aggressive animal. The dog was struck in the head area and immediately fled the house with the other dogs following.

As SIRT and WESTNET personnel searched the residence they found that the house heavily fortified. The house appeared to have been designed and built with these fortifications in mind. Each window had a counter balanced weights that when released would allow a wooden/metal device to slid upward covering the entire window. There were motion detection

WSP DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT
NO. C05-5575RBL

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

devices all around the house and on the driveway to warn of travelers up the driveway. The walls to the house were cement and each opening was fortified. SIRT members cleared the area without further incident.

After the residence was cleared and plaintiff was held in custody, Detective Halsted located marijuana plants near the house. It was later determined that there were 36 growing marijuana plants and nine that had been cut down and lying on the nearby grass. The plants were removed and marked as evidence. Detective Halsted read plaintiff his Miranda rights, which plaintiff acknowledged and agreed to speak to Detective Halsted without an attorney. Plaintiff informed Detective Halsted that he was allowed to grow marijuana and had medical authorization for it in his wallet. He indicated that his physician was Sandra Karlsvik, his wife. In his wallet, plaintiff had a yellow "post-it" note with the following words: "I am advising that Mr. Doug Wood consume oral cannabis t.i.d. for a neurological disorder with pain and anorexia," signed by Sandra Karlsvik, M.D. *Id*.

Detective Halsted felt that the "post-it" note did not comply with the laws allowing for the use of medical marijuana. In addition, the quantity of marijuana plants discovered upon the premises appeared, to Det. Halsted, to be clearly in excess of what would be allowed for personal use under the Medical Marijuana Act.[3] Ultimately, Douglas Wood was transported to the Pierce County Jail and booked for manufacturing a controlled substance – marijuana.

WSP Defendants also present the following facts to supplement the Statement of Facts presented in behalf of Defendants Schuster, Dougil, and Halsted in support of their Motion for Summary Judgment:

WSP DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT
NO. C05-5575RBL

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

The Pierce County Prosecutor's office filed an Information and Probable Cause pleading accusing Mr. Wood of unlawful manufacturing a controlled substance and unlawful possession of a controlled substance with the additional qualification that Mr. Wood was armed with a firearm. *Stier Declaration, Ex. A, Refer to Information and Declaration for Determination of Probable Cause, Docket 02-1-04179-7*. Subsequently, the prosecutor filed a Motion and Order of Dismissal with Prejudice citing the fact that Mr. Wood provided some minimal medical marijuana documentation to the officers at the time of his arrest and later provided valid documentation that supported his medical marijuana defense to the prosecutor. *Stier Declaration, Ex. B, Order of Dismissal with Prejudice, Docket 02-1-04179-7*.

### III.

### ISSUES

1. Should WSP Defendants be entitled to Qualified Immunity from all of Plaintiffs' Claims?

2. Should Plaintiffs' claim for violations of their Fourteenth Amendment rights be Dismissed, as WSP Defendants did not Violate Plaintiffs' Constitutional Rights and there is no Evidence of any Conduct that "Shocks the Conscience" or is "Utterly Intolerable" in Civilized Society?

3. Can WSP Defendants be found Liable under the Fourth Amendment when the Search was Conducted pursuant to a Warrant Obtained by a Third Party?

4. Do law enforcement officers have a duty to determine whether medical marijuana is permissible pursuant to Ch. 69.51A RCW, prior to a search or arrest?

---

[3] Also see *Stier Declaration, Exhibit D*, consisting of the unrebutted opinion of Bremerton Detective Joe Alloway that the 36 plants seized in this search would supply nineteen (19) times the amount of marijuana

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO. C05-5575RBL

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

1      5. Is an individual claiming that a marijuana grow is permissible under the medical

marijuana act, entitled to be free from arrest or prosecution?

## IV.

## ARGUMENT

**A. Summary Judgment Standards.**

CR 56 provides in relevant part as follows:

> (c) ... The judgment sought shall be rendered forthwith if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ....
>
> (e) ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.·

A defendant moving for summary judgment may prevail by showing that there is an absence of evidence to support an essential element of plaintiff's claim. *Young v. Key Pharmaceuticals, Inc.,* 112 Wn.2d- 216, 225, 770 P.2d 182 (1989). Upon such a showing, the burden shifts to the plaintiff to produce evidence which, when viewed in a light most favorable to the plaintiff, is sufficient to establish the existence of each element essential to plaintiff's claim. *Id.* A nonmoving party must set forth specific facts; speculation, argumentative assertions, opinions and conclusory statements will not defeat a properly supported summary judgment motion. *Suarez v. Newquist,* 70 Wn. App. 827, 832, 855 P.2d 1200 (1993) citing *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988).

---

necessary to meet Mr. Woods' six (6) month dosage level of one (1) rounded tablespoon a day for his tea.

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT NO. C05-5575RBL     7     ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

**B. WSP Defendants are Secondary to Primary WESTNET Players, and thus all Defenses of the Primary WESTNET Players should Operate to Insulate WSP Defendants from Liability.**

WESTNET is an interlocal drug task force designed to provide for and regulate the joint efforts of several law enforcement agencies, the type envisioned by the state legislature expressed by The Washington Mutual Aid Peace Officers Powers Act of 1985. *Ch. 10.93 RCW*. Ch.10.93 RCW was intended to effectuate mutual aid among agencies, and in furtherance of that goal, specifically allocated liability to the primary commissioning agency and indemnified contributing agencies from the negligent acts of the others. *RCW 10.93.40, Liability for Exercise of Authority.*

Here, the tips were obtained by police officers of the Cities of Gig Harbor and Poulsbo, the flyover was performed by local police officers in a DEA aircraft, local police officers performed the land drive-by of the premises, local police officers performed the research of property ownership details, the warrant was obtained by Det. Halsted of the Poulsbo Police Dept., questioning and the arrest of Mr. Wood was conducted by Det. Halsted, follow-up questioning of Dr. Karlsvik was performed by Det. Halsted, and the prosecution was conducted through Pierce County superior court by the Pierce county Prosecuting Attorney. The only involvement of WSP SIRT members was to provide assistance in securing the premises due to perceived hazards ("the reported use of gunfire on the property, surveillance and warning devices reported to be present upon the property, as well as a "bunker-like" reinforced residence" surrounded by an apparent moat with a drawbridge.

Being a secondary player, WSP and its officers can only be held liable derivatively for the acts of other involved officers-i.e. defenses applicable to City of Gig Harbor Poulsbo Police

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO.  C05-5575RBL

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

Department officers are equally applicable to WSP Defendants. As such, WSP Defendants adopt the following arguments of Gig Harbor Police Department Defendants presented in their opening Memorandum of Authorities in Support of Local Police Department Defendants' Motion for Summary Judgment:

**1. WSP Defendants are entitled to Qualified Immunity**.

Based on the information available and know to the police at the time the search warrant was executed, the tactics, strategy and force used were objectively reasonable. Therefore, WSP Defendants are entitled to qualified immunity on all of plaintiffs' constitutional claims under the second prong of *Saucier*[4] test and those claims should be dismissed as a matter of law. See *Local Officers' Memorandum of Authorities in support of their Motion for Summary Judgment, § V.B.*

**2. WSP Defendants Did Not Violate Plaintiffs' Fourth or Fourteenth Amendment Rights.**

Plaintiffs' claims should be dismissed in their entirety against all defendants, including WSP Defendants because the warrant to search plaintiffs' property was obtained on probable cause, through valid means, and there is no evidence of excessive force, to wit:

**a. The Search and Arrest Were Based on Probable Cause.** Defendants did not violate any of plaintiffs' constitutional rights. The warrantless search of plaintiff's property by helicopter has been deemed constitutional by clear federal law. The police established probable cause to support the warrant to search plaintiffs' home. See *Local Officers' Memorandum of Authorities in support of their Motion for Summary Judgment, §V. C. 1.*

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO. C05-5575RBL

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

**b. There Was No Excessive Force Used Against Plaintiff.** Plaintiff's claims of excessive force, if any, fail any analysis under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386 (1989). Refer to *Local Officers' Memorandum of Authorities in support of their Motion for Summary Judgment, §V. C. 2*.b: *The Force Alleged Was Not Excessive as a Matter of Law*; and, *§V. C. 3*: *Plaintiffs' Fourteenth Amendment Rights Have Not Been Violated.*

In addition, the only "force" used by the SIRT team was in their attempts to gain access to the house where no apparent entries existed and using nonlethal force (a pepperball) against an apparently growling dog. Certainly, these actions do not "shock the conscience" and appear to be reasonably related to a restrained search authorized by warrant in the rough and tumble world of drug interdiction.

**C. When one officer obtains a search warrant and another officer executes it, the arresting officers are generally entitled to rely upon assertions that there is a proper warrant.**

Again, WSP officers were secondary players in this WESTNET operation providing SWAT support to the execution of the warrant. In this case, the warrant to search the Wood residence was investigated, produced, and obtained by non-WSP defendants, including Detective Halsted of the Poulsbo Police Department who obtained the warrant and also contacted the WSP for assistance because of the perceived hazards associated with this search.[5] WSP Lt. (then Sgt.) Drake states that:

> [He] personally reviewed the subject warrant prior to the safety briefing on September 5, 2002, and found it to be facially valid containing the judge's

---

[4] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).
[5] "the reported use of gunfire on the property, surveillance and warning devices reported to be present upon the property, as well as a "bunker-like" reinforced residence" surrounded by an apparent moat with a drawbridge.

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT NO. C05-5575RBL

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

> signature and the proper address for the subject property. To this date, [he is] not aware of any fact(s) cited by Det. Halsted in his Complaint for Search Warrant, with supporting affidavit, that could have been known to be inaccurate or misleading at the time of [his] review of the subject warrant.

*Declaration of WSP Lt. Randy Drake, ¶ 7.*

It is well settled that law enforcement officers are entitled to rely upon one another that a proper warrant exists. In fact, officers executing a warrant are not required to actually see the warrant. *Guerra v. Sutton*, 783 F.2d 1371 (9th Cir.1986). In *Marks v.Clarke*, 102 F.3d 1012 citing *Guerra*, the court held that officers executing a warrant have a duty to inquire as to the "nature, scope, and details of the warrant." *See Generally Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979*); Arnsberg. V. United States*, 757 F.2d 971, 981 (9th Cir. 1985). "The system requires reasonable cooperation and division of labor, and the INS may reasonably rely on the statement of a responsible law enforcement officer (here, the Chief of Police) to conclude that a proper warrant exists." *Guerra* at 1375. Although the court in Guerra found that the INS agents could rely on a statement that a warrant existed, the court reversed because no such warrant even existed, therefore no inquiry could be made into the "nature, scope, and details" of the warrant.

In the case at bar, the validity of the warrant was never challenged within the prosecution, or otherwise; instead the case was dismissed, at the discretion of the prosecutor, due to an apparent belief that Mr. Wood had sufficiently corroborated his medical marijuana ***affirmative defense*** under the requirements of RCW 69.51A.101(5)(a) ***after*** the arrest and filing of criminal charges against Mr. Wood. In addition, there is no evidence or legal argument whatsoever that there Det. Halsted and, indeed, the approving judicial officer, lacked of probable cause to seek and authorize this warrant.

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO. C05-5575RBL

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 459-6600

In other words, the warrant appeared to be facially valid, it was reviewed by WSP prior to execution and found to be facially valid, and, to this date, it was substantively valid and based upon probable cause.

**D. Law Enforcement Officers have no Duty to Determine whether Medical Marijuana is Permissible Pursuant to Ch. 69.51A RCW, prior to a Search or Arrest.**

Apparently, plaintiffs contend that Mr. wood's successful assertion of a medical marijuana affirmative defense, after the fact, retroactively renders the warrant, and ensuing search invalid. Nothing could be further from the case.

Under Ch. 69.51A RCW, (hereinafter "the Act"), a qualifying patient must possess "no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply." RCW 69.51A.040(2)(b). The marijuana located on the plaintiff's property was visible by aerial surveillance. The evidence inventory shows that 45 marijuana plants were seized, along with several jars and ziploc baggies containing processed marijuana. *Stier Declaration, Ex. C.* It is undisputed by Mr. Wood's own testimony that his accumulation of marijuana was for a period in excess of sixty (60) days:

> Q  How did you go through the cycle of growing plants or --
> A  Plant them in the spring, pick the leaves as I needed them until they died or were gone, and then I wouldn't have access to marijuana for most of the year.
> Q  So you plant them on an annual basis?
> A  Yes.
> Q  And then would you have to dry the leaves?  Was there a process you had to go through to prepare the marijuana --
> A  They --
> Q  -- for a tea?
> A  -- don't have to be dried for tea.  Put them in a cup, dry or wet.

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT NO. C05-5575RBL

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

```
Q  Did the plants have buds as well?
A  Only in the fall.
Q  Did you use both the leaf and the buds for --
A  Interchangeably.
Q  Okay.  You used both?
A  Yes.
```

*Rosen Declaration, Exhibit B, Deposition transcript of Douglas Wood, p. 64, ln.20 through p. 65, ln. 12.*

And when did Mr. Wood get his headaches and need marijuana for pain?

```
Q  What percentage of the time that you experience the pain is it at that
   high level, the highest level?
A  It's random.  It has no normal expec- -- I can't -- I can't expect one thing
   or another from it.  I can't expect the pain to go away or I can't expect it to
   get worse.  It's unpredictable.
Q  I guess the question was:  What percentage of the time is it at that
   debilitating level?
A  It depends on the time of year and the nature of --
   sequencing of pain.  It can be very bad every day.
Q  Debilitating --
A  Yes --
Q  -- every day?
A  -- every day.
Q  In the average month how many teaspoons of marijuana do you use?
A  If it's every day, it may last every day for 60 to 90 days at a severe
   level.  In which case I would drink a cup a day every day if it lasted at a
   severe level every day for 60 to 90 days.
Q  And have there been instances in the past where it has
   lasted at a severe level for 60 to 90 days?
A  Oh, yes, every year.
Q  In the fall.
A  Yes.  Mostly in the fall.  Not always in the fall.
```

So, Mr. Wood plants in the Spring for use in the Fall, and at other times during the year that his headaches appear. By his own admission, the marijuana is on his premises more than six (6) months.

In addition, the unrebutted opinion of Det. Alloway (*Stier Declaration, Exhibit D*) is that the marijuana found on the premises was nineteen (19) times more than a sixty (60) day

WSP DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT
NO. C05-5575RBL

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

supply at Mr. Wood's admitted daily dosage level, even if he used the marijuana every day which, by his own admission, he didn't.

The arresting officers (non-WSP personnel, by the way) reasonably determined that the amount of marijuana that was observed on premises exceeded that which would be necessary for a sixty-day supply. Plaintiffs have no evidence that this conclusion was unreasonable.

In addition, the Act requires "valid documentation." RCW 69.50A.010(5)(a)  A "post-it" note signed by his wife, a physician, is not normally considered to be an acceptable medical record.[6] In *State v. Butler*, 126 Wash.App. 741, 109 P.3d 493, 497 (2005), the court stated that "in order to render his [defendant's] marijuana possession legal under the Act, he needed to obtain and to possess this required documentation from his personal physician *in advance* of law enforcement's questioning his medical use and possession. (*Emphasis added*)  Other states with medical marijuana laws such as Arkansas, Hawaii, and Oregon, require state registration to monitor and identify patients who are eligible for home cultivation of marijuana.  Washington has no such registration, so it was not possible for police officers to conduct an inquiry into the legitimacy of a suspect's drug cultivation.  Even if there were state registration, police officers have no duty to conduct such an investigation, especially considering the magnitude of the plaintiff's marijuana operations.

In addition, since "The Act" offers medical marijuana as an affirmative defense to possession or cultivation charges, law enforcement are not even required to request or consider whether documentation is valid under the act, or if it in fact exists.

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO.  C05-5575RBL

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

In 1996, the voters of California approved an initiative which created the "Compassionate Use Act of 1996," which was a similar medical marijuana law to that of Washington. In *People v. Mower*, 28 Cal.4th 457, 49 P.3d 1067, 122 Cal.Rptr.2d 326, the court recognized the California medical marijuana act as a defense at trial, but strongly rejected the defendant's characterization as a "novel kind of 'complete' immunity from prosecution." *Mower* at 11. The court stated "The immunity invoked by defendant would have shielded him not only from prosecution but even from arrest, and would have required reversal…because of the alleged failure by law enforcement officers to conduct an adequate investigation of his status as a qualified patient or primary caregiver before proceeding to arrest."

Mr. Wood was not entitled to complete immunity from arrest or prosecution under Washington's Medical Marijuana Act, he was only entitled to raise medical use as an affirmative defense at trial, or in pre-trial negotiations with the Kitsap County Prosecutor, which he did.

## V.

## CONCLUSION

WSP Defendants are secondary to primary WESTNET players, and thus all defenses of the primary WESTNET players should operate to insulate WSP Defendants from liability including the defenses that defendant officers are entitled to Qualified Immunity and did not violate Plaintiffs' Fourth or Fourteenth Amendment rights.

---

[6] It is relevant to note that the State Board of Medical Quality Assurance agrees by disciplining Dr. Karlsvik for her failure to maintain appropriate medical records in her "treatment" of her husband. *Stier Declaration, Exhibis E & F.*

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO. C05-5575RBL

15

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

In addition, WSP Defendants, as participants relying upon the search warrant, satisfied all standards of secondary review of the still valid search warrant. Finally, all involved law enforcement officers had no duty to determine whether medical marijuana in the possession of Mr. Wood was permissible pursuant to Ch. 69.51A RCW, prior to a search or arrest.

As such, WSP Defendants respectfully request the Court to dismiss all claims against them, with prejudice, in this matter.

DATED this 16th day of November, 2006.

ROB MCKENNA
Attorney General


 /s/ Jeffrey D. Stier
JEFFREY D. STIER, WSBA No. 6911
Assistant Attorney General
Attorneys for WSP Defendants

WSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
NO.  C05-5575RBL

16

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600

**PROOF OF SERVICE**

I hereby certify that on November 16, 2006, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will sent notification of such filing to the following:

| | |
|---|---|
| Mark Leemon | leemon@leeroylaw.com |
| Robert L. Christie | bob@christielawgroup.com |
| Jason M. Rosen | Jason@christielawgroup.com |

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 16th day of November, 2006, at Lacey, WA.

   /s/  Jeffrey D. Stier
JEFFREY D. STIER, WSBA No. 6911

WSP DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES AND DEMAND FOR JURY – NO. C05-5575RBL

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA  98504-0126
(360) 459-6600