HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DOUGLAS WOOD and SANDRA KARLSVIK, husband and wife,

Plaintiffs,

v.

KITSAP COUNTY; WEST SOUND NARCOTICS ENFORCEMENT TEAM; OFFICER MATTHEW DOUGIL (WestNET); GIG HARBOR POLICE DEPARTMENT; DETECTIVE JOHN DOE SCHUSTER (WestNET) DETECTIVE JOHN HALSTED (POULSBO POLICE DEPT., WestNET, Badge # 606); DETECTIVE G.R. MARS (WSP STATEWIDE INCIDENT RESPONSE TEAM, Badge # 685); DETECTIVE JOHN DOE WILSON and JOHN DOES 1-25,

Defendants.

Case No. C05-5575RBL

ORDER GRANTING AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter comes before the Court on Motions for Summary Judgement by Defendants Schuster, Halsted, and Dougil,[1] Dkt. # 42, and Defendant Washington State Patrol (WSP), Dkt. # 50.[2] Plaintiffs

---

[1] This Court entered an Order on Stipulation dismissing Defendant Schuster on February 16, 2007, Dkt. # 77. Consequently, this Order does not address Schuster, and all further references to the Schuster, Halsted, and Dougil Motion for Summary Judgment will be to Halsted and Dougil.

[2] Washington State Patrol's Motion includes, but is not limited to, Defendants George R. Mars and Detective Orest Wilson. All further references in this Order will be to WSP.

ORDER
Page - 1

Douglas Wood and Sandra Karlsvik sued the Defendants[3] under § 1983, § 1988, the Fourth Amendment, and the Fourteenth Amendment, as well as the common law of torts, for the Defendants' actions of obtaining and executing a search warrant. Defendants suspected Plaintiffs were growing marijuana on their property. Plaintiffs claim that Defendants violated their civil rights because they lacked probable cause to obtain the warrant and because the manner in which they executed the search on September 5, 2002, was unreasonable and involved excessive force.

Halsted and Dougil ask this Court to grant summary judgment, arguing that they are entitled to qualified immunity because (1) they did not violate Plaintiffs' constitutional rights; (2) even if they did violate Plaintiffs' constitutional rights, a reasonable police officer faced with the same circumstances would have believed the Defendants' conduct to be lawful. Defendant WSP argues that (1) it is entitled to qualified immunity; (2) that it did not violate Plaintiffs' Fourteenth Amendment rights; (3) that it did not violate Plaintiffs' Fourth Amendment rights because its search of Plaintiff Wood and his residence was conducted pursuant to a search warrant obtained by a third party; and (4) that it did not have a duty to determine whether Plaintiff Wood's marijuana use was legal pursuant to RCW 69.51A prior to searching his residence or arresting him.

## II. FACTS

Taken in the light most favorable to Plaintiffs, the non-moving party, the relevant facts are as follows:

Plaintiffs Douglas Wood and his wife Sandra Karlsvik are residents of Fox Island, Pierce County, Washington. Title to Plaintiffs' home is held by Organic Sunflower Foundation Inc. Wood originally held title to the property, but he deeded title to Solar Steam Inc. in 1989. In 1995, Solar Steam Inc. deeded title to Organic Sunflower Foundation Inc.

---

[3]Plaintiffs voluntarily dismissed Defendant Kitsap County on May 30, 2006, Dkt. # 32. WestNET is not a legal entity and is therefore not a proper defendant. *See Hervey v. Estes*, 65 F.3d 784, 791–92 (9th Cir. 1995).

ORDER
Page - 2

Defendant Officer Dougil is an officer with the Gig Harbor Police Department. Defendant Officer Halsted is an officer with the City of Poulsbo Police Department. Dougil, Halsted, and the WSP were part of WestNET, a multi-jurisdictional drug task force, at the time the events occurred. .

In 1998, an informant heard from friends that Plaintiffs were growing marijuana on their property. The informant attempted to steal some marijuana, but Plaintiff Wood caught him and turned him into the police. The informant had a criminal record, and Defendant Officer Dougil, the officer who spoke with the informant, stated that the informant was credible "[o]nly in that he was knowledgeable about drugs and marijuana. He knew what marijuana was and looked like because he had been involved in it . . . . He was there to steal marijuana plants, the way he described them. That's about all the credibility I gave him at that point." According to Wood, officers inspected Plaintiffs' home but did not find any marijuana. The police report regarding the incident noted that Plaintiffs were installing a motion sensor alarm on their property.

In 2001, Officer Dougil received an anonymous tip via a marijuana hotline that the informant (who was seemingly a different individual than the informant in 1998) drove into Plaintiffs' driveway while looking for an address and observed two men unloading marijuana plants from the bed of a truck. However, the driveway to Plaintiffs' home ends a significant distance from the home, and Plaintiffs claim that "one could not drive up to the residence without first traveling over an open [field.]" Pl. Resp. 4.

On August 27, 2002, Officer Dougil and Detective Schuster flew over Plaintiffs' property in a MD 500 helicopter at an altitude of 700 feet. Both officers claim to have spotted marijuana growing on Plaintiffs' property, and they took numerous photographs of the scene. Prior to flying over Plaintiffs' residence, Detective Schuster had completed aerial marijuana spotter school. Officer Dougil was in the process of completing the school at the time he flew over Plaintiffs' property.

On August 29, 2002, Officer Dougil sent an email to Officer Halsted. In that email, Dougil explained

that Plaintiffs' neighbors told Dougil that they heard gunfire coming from the direction of Plaintiffs' property.

On September 3, 2002, Defendant Officer Halsted submitted a Complaint for a Search Warrant to search Plaintiffs' residence for marijuana and related paraphernalia.[4] A Kitsap County Superior Court judge issued the requested warrant.

On September 5, 2002, at around 6:00 a.m., Dougil, Halsted, approximately 10 officers from WSP's SIRT Team, and a number of other officers from WestNET arrived at Plaintiffs' residence to serve the search warrant. Initially, officers were unable to determine how to get into Plaintiffs' home; they described it as a "fortress-like" structure. Wood soon came to an upstairs window, and the officers ordered him to show his hands. He complied. Wood states that he was afraid the officers were going to shoot him because they had their weapons pointed at him. Wood eventually came downstairs and opened the door, allowing the officers access to his home. Trooper Wilson handcuffed Wood upon entering the home.

Wood claims that even though one of the officers "was designated to 'Knock and Announce,' and plans had been made for one of the SIRT team members to announce their presence over a loud speaker, neither of these took place." Pl. Resp. 7.

Wood claims that even though he opened the upstairs door for the officers, other officers attempted to break into his house by smashing his downstairs door and breaking a window. Wood claims Officer Mars is responsible for breaking a window. Wood claims he asked the officer with him to tell the other officers to stop banging on his house and breaking windows, but the officer refused to do so. Additionally, Wood claims that officers unnecessarily pried a door open with a pry bar when they could have simply opened it. Although the door did not have a regular door handle on it, the officers could have opened the door by pulling a rope that hangs by the door which disengages the door latch. The door was not locked. Moreover, Wood claims that the door does have a handle on the inside and that officers were already inside his house when the officers pried the door open from the outside; thus, the officers inside the house could have simply

---

[4] The evidence provided in support of the Complaint for the Search Warrant is discussed infra Part III.B.

ORDER
Page - 4

opened the door, thereby eliminating the need for the officers outside the house to pry the door open.

WSP claims that they encountered three growling dogs upon entering Plaintiffs' home and that they had to use a pepper ball gun to protect themselves. However, Wood claims that the dog they shot was an eleven year old golden retriever who could not go up and down stairs. After being shot with the pepper ball gun, the dog was permanently blind in one eye.

Officers found a patch of marijuana growing behind Plaintiffs' house. Wood claims he grows the marijuana for medical purposes; he uses it for treatment of a condition from which he suffers called trigeminal neuralgia. Wood explained this to the officers and produced a handwritten note from his wife, a physician, concerning her advice about use of medical marijuana. The note stated, "I am advising that Mr. Doug Wood consume oral cannabis t.i.d. for a neurological disorder with pain and anorexia," and was signed by Sandra Karlsvik. Wood claims he also gave the officers documentation recommended by the Washington State Medical Association. According to Wood, the officers were unconcerned with the specifics of the documentation and instead tried to determine whether Wood possessed more than a 60-day supply of marijuana as authorized by the Medical Marijuana statute, RCW 69.51A.

Wood claims that after this discussion was over, he heard someone yell, "Fire," from downstairs, and all the officers ran out of the house. Someone rushed Wood out of the house as well. Wood asked if his house was on fire, and he was told it was not, but he saw a cloud of what appeared to be smoke coming from the lower level of his home. He heard one of the officers say the cloud was CN, a type of tear gas. Wood claims that the gas left a white residue on everything in the lower level of his house, which was very difficult to remove. Plaintiffs thoroughly cleaned their home before moving back in, as they feared there were toxic chemicals in their house, and they had to throw everything made of cloth away because they could not remove the white residue.

Officer Halsted believed that the note produced by Wood authorizing his medical marijuana use did not comply with the Medical Marijuana statute and that Wood had more marijuana than allowed under the statute. Consequently, Officer Halsted arrested Wood.

While waiting for someone from the Pierce County Sheriff's Office to pick Wood up to transfer him to jail, an officer removed Wood's handcuffs so he could urinate. Wood's injured dog came up to Wood, and Wood leaned down to comfort her. Wood then claims an officer picked him and forcibly slammed him face first into the hood of a SUV. Wood again reached out to his injured pet and was slammed into the hood several more times. Wood claims no one offered to get medical help for his dog; instead, the officers offered only to take the dog to the pound. Wood declined the offer.

Wood was later booked into the Pierce County Jail.[5]

Officer Dougil participated in the execution of the search warrant by securing the back perimeter of Plaintiffs' home, and claims that he had no contact with Plaintiffs or their dogs during the execution and that he did not enter Plaintiffs' home until Wood had been detained and taken from the property.

**A. Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. FRCP 56(c); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th 2000) (citations omitted). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes

---

[5] Wood was charged with unlawfully manufacturing and possessing a controlled substance, but all charges were subsequently dropped because Wood provided sufficient medical marijuana documentation.

whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

### B. Probable Cause in Obtaining the Warrant–Defendants Dougil and Halsted

Qualified immunity is not simply a defense to liability; it instead provides a defendant with immunity from suit. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In determining whether this Court should grant the Defendants qualified immunity, the court must address two issues: (1) taken in the light most favorable to the Plaintiffs, whether the alleged facts show that the Defendants violated the Plaintiffs' constitutional rights; and (2) if so, whether that constitutional right was clearly established. *Id.* at 201. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

The qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)).

For this Court to deny Dougil and Halsted qualified immunity on the issue of probable cause, Plaintiffs must show that Dougil and Halsted "submitted an affidavit that contained statements [they] knew to be false or would have known to be false had [they] not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements." *See Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997) (citing *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991)). Specifically, plaintiffs must "(1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and (2) establish that, but for the dishonesty, the challenged action would not have occurred." *Id.* at 973 (citing *Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995)).

Plaintiffs claim that "[p]ractically all of the material statements made in the application for the search warrant" were "inaccurate and/or misleading." Pl. Resp. 8. The evidence supporting the application for the search warrant, dated September 3, 2002, included the following:

- In 1998, Officer Dougil spoke with an informant who attempted to steal marijuana from Plaintiffs' residence. The informant had heard from teenage friends that Plaintiffs were growing marijuana on their back porch; however, when the informant arrived at Plaintiffs' residence, he found marijuana growing under the deck. The informant's attempt to steal the marijuana was thwarted by Wood, who caught him and handed him over to the Pierce County Sheriff's Office.

- In the report regarding the informant's arrest, the Pierce County Sheriff's Office noted that Plaintiff Wood was installing a motion sensor alarm on his property.

- In 2001, Officer Dougil received a tip from the Marijuana Hotline that the tipster was lost and drove into Plaintiffs' driveway looking for an address, and observed two males unloading marijuana plants from the bed of a truck.

- On August 27, 2002, Officer Dougil and Detective Schuster flew over Plaintiffs' property in a helicopter at an altitude of 700 feet. Both observed marijuana plants on the south side of the residence. Both Dougil and Schuster had completed aerial marijuana spotters school and had made aerial observations of marijuana prior to flying over Plaintiffs' property.

- Officer Dougil was told by Plaintiffs' neighbors that they had heard automatic gunfire coming from Plaintiffs' property.

- The title to Plaintiffs' residence is held by Organic Sunflower Foundation Inc. Plaintiff Wood originally held title to the property, and in 1989, deeded it to Solar Steam Inc. In 1995, Solar Steam Inc. deeded the property to Organic Sunflower Foundation Inc. Officer Halsted believed that Plaintiff Wood owned

both organizations. He also stated that, based on his previous investigations of marijuana growers, "they commonly place properties, assets and public records under fictitious names." Compl. for Search Warrant at 2–4 (Ex. 1 in Decl. of Mark Leemon).

Plaintiffs dispute the accuracy of some of this information. For example, Wood disputes that Organic Sunflower Foundation Inc. and Solar Steam Inc. are fictitious entities. Decl. of Douglas Wood 5. However, whether the information in the search warrant application is in fact false is not the appropriate inquiry in determining whether the officers had probable cause; instead, this Court must examine whether, in light of the clearly established law and the information the officers possessed at the time, the officers could have reasonably believed they had probable cause. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted). That some of the information later turned out to be false is, by itself, insufficient to support a finding that the officers violated Plaintiffs' constitutional rights.

However, if Plaintiffs can make a "substantial showing" that Dougil and Halsted deliberately or recklessly disregarded the truth in the application for the search warrant, the shield of qualified immunity may be lost. Plaintiffs claim a number of factual inaccuracies and omissions meet this "substantial showing."

First, Officer Halsted stated in the application for the search warrant that Officer Dougil told him that "neighbors in the area have heard automatic gunfire sounds coming from the suspects [sic] property." Compl. for Search Warrant at 3 (Ex. 1 in Decl. of Mark Leemon). However, Officer Dougil stated in an email drafted on August 29, 2002, that another officer had told him that he regularly heard gunfire "*coming from the direction of*" Plaintiffs' property, not that the gunfire was definitely coming from Plaintiffs' property as claimed in the application for the search warrant. Additionally, Officer Dougil reiterated in his deposition that another officer had told him only that he had heard gunfire coming "from the direction of" Plaintiffs' property but was never more specific than that. Matthew Dougil Dep. 11: 7–11, Oct. 3, 2006 (Ex.

4 in Decl. of Mark Leemon). Plaintiffs claim that Defendants intentionally misrepresented this fact in the application for the search warrant.

Second, Plaintiffs point out that the informant who provided information in 1998 was someone who had had run-ins with the police on several occasions; was involved in illegal drug activity; and according to Officer Dougil, was credible "[o]nly in that he was knowledgeable about drugs and marijuana. He knew what marijuana was and looked like because he had been involved in it . . . . He was there to steal marijuana plants, the way he described them. That's about all the credibility I gave him at that point." Matthew Dougil Dep. 9:22–10:19, Oct. 3, 2006 (Ex. 4 in Decl. of Mark Leemon). None of this information was included in the application for the search warrant.

Finally, Plaintiffs point out that Officer Dougil stated in his deposition that he was unsure whether he had in fact completed the aerial marijuana training school prior to flying over Plaintiffs' property or whether he was in the process of completing the training at the time he flew over Plaintiffs' property. However, in the application for the search warrant, Officer Halsted stated, "Both Detective Schuster and Officer Dougil have completed aerial marijuana spotters school. Both officers have spotted over 100 marijuana plants in various locations from both fixed wing and rotary wing aircraft." Detective Schuster's Declaration reiterates that he had completed marijuana spotting school and had spotted marijuana over 100 times from the air, but Officer Dougil's declaration does not contain a similar claim.

Together, Plaintiffs claim that these factual misstatements and omissions meet the required "substantial showing" under the first prong of test for denying Dougil and Halsted qualified immunity.

Dougil and Halsted respond, in part, by arguing that the police's observation of Wood growing marijuana on his property was sufficient in itself to provide probable cause. *See United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001). Plaintiffs do not challenge the constitutionality of the aerial observation of the marijuana growing on Plaintiffs' property. *See California v. Ciraolo*, 476 U.S. 207,

213–14 (1986) (holding that an individual does not have a reasonable expectation that his or her garden is protected from aerial police observation). However, Plaintiffs do challenge whether Dougil had completed sufficient training to be able to identify marijuana from an altitude of 700 feet, or at least whether Halsted accurately represented Dougil's ability to do so in the application for the search warrant.[6]

Plaintiffs have failed to satisfy their burden of making a "substantial showing" that Dougil and Halsted deliberately or recklessly disregarded the truth in the application for the search warrant. Plaintiffs present no evidence that Halsted intentionally lied in the warrant application. Although Halsted failed to include some arguably relevant information in the warrant application, Plaintiffs have failed to establish that the omissions were material. "In determining materiality, '[t]he pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause.'" *United States v. Chavez*, 306 F.3d 973, 979 (9th Cir. 2002) (citing *United States v. Garcia-Cruz*, 978 F.2d 537, 541 (9th Cir. 1992)). For example, even though Halsted failed to include in the application that Dougil thought the informant was credible only to the extent he was knowledgeable about marijuana, the addition of that information does not lead to the conclusion that the warrant was issued without probable cause.

To the contrary, even assuming that Plaintiffs have made a "substantial showing" that Dougil and Halsted deliberately or recklessly disregarded the truth of these facts as claimed by Plaintiffs, Plaintiffs have failed to satisfy the Court probable cause was otherwise lacking. Even if Halsted misrepresented Dougil's training in the warrant application, there is no dispute that Schuster did have experience in aerial marijuana spotting and that he spotted marijuana growing on Plaintiffs' property. This fact alone is sufficient to support issuance of the warrant. See *United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001). Thus, regardless of whether other information contained in the warrant application was false or

---

[6] Plaintiffs argue in their Response that Officer Dougil stated in his deposition, "Frankly from 700 feet, I couldn't tell what was down there but that it was green." However, Dougil and Halsted point out in their Reply that the comment was actually a rhetorical statement made by Plaintiffs' counsel during Dougil's deposition, not a comment by Dougil. Matthew Dougil Dep. 26: 9–10, Oct. 3, 2006 (Ex. 4 in Decl. of Mark Leemon).

ORDER
Page - 11

misleading or whether additional information should have been included, a sufficient basis still existed for finding probable cause. Because probable cause existed to support issuance of the warrant, Dougil and Halsted did not violate Plaintiffs' constitutional rights. Therefore, Dougil and Halsted have qualified immunity as to Plaintiffs' lack of probable cause claims..

### C. Probable Cause for Warrant–WSP

WSP claims it played no part in obtaining the warrant for the search of Plaintiffs' residence, and Plaintiffs do not dispute this. In fact, Plaintiffs make no argument as to why WSP should be held liable in connection with the warrant or the issue of probable cause; instead, Plaintiffs focus solely on the role WSP played in executing the warrant and carrying out the search of Plaintiffs' property. Therefore, to the extent Plaintiffs may have had a claim against WSP regarding issuance of the warrant or probable cause, the Court grants WSP qualified immunity on that issue.

### D. Reasonableness of the Search Under the Fourth Amendment–WSP

In determining whether the Defendants WSP used excessive force in executing the search warrant and arresting Wood, the Court must review the Defendants' actions under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interest at stake." *Id.* at 396 (citations omitted). The reasonableness of the force used by the officers "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Thus, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)). This includes an examination of "the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Robinson v. Solano County*, 278 F.2d 1007, 1014 (9th Cir. 2002) (citing *Graham*, 490 U.S. at 397).

Plaintiffs claim that Defendants' "extreme show of paramilitary force" was unreasonable and violated Plaintiffs' Fourth Amendment rights. Pl. Response at 10. Defendants do not dispute that Wood was seized under the Fourth Amendment; they argue only that the force used was reasonable under the circumstances.

Plaintiffs have presented the Court with sufficient evidence to support their claim the that force used by Defendants WSP was unreasonable under the Fourth Amendment.

The Court concludes that the present case is similar to *Robinson v. Solano County*, 278 F.3d 1007. In *Robinson*, the court held that the defendant officers used excessive force by pointing their guns at the head of the plaintiff when the plaintiff was obviously unarmed and the plaintiff was approaching the officers in a peaceful way.[7] *Id.* The officers were investigating whether the plaintiff committed, at most, a misdemeanor, and the defendants outnumbered the plaintiff. *Id.* Moreover, there were no dangerous or exigent circumstances apparent at the time the defendants detained the plaintiff. 278 F.3d at 1014. The court concluded the force the defendants used was excessive even though the plaintiff had been armed with a shotgun earlier that day that he used to shoot a neighbor's dog. *Id.*

Similarly, in this case, an examination of the force used in connection with the facts known to the Defendants at the time of executing the warrant shows that the force used by Defendants was not necessarily reasonable as a matter of law. They broke a window and pried open a door, damaging it, when other officers had already entered the residence through a different door. They shot Plaintiffs' dog in the face with a pepperball gun, claiming that the dog was aggressive, yet Plaintiff describes the injured pet as an eleven year

---

[7] However, the court went on to hold that even though the defendants used excessive force in violation of the Fourth Amendment, they were nonetheless entitled to qualified immunity because the law regarding when an officer may reasonably point his gun at the head of a suspect was not clearly established at the time of the incident. *Id.* at 1013.

old dog who could not go up and down stairs. And most importantly, Defendants allegedly released some sort of tear gas in Plaintiffs's house when Wood was already detained and Defendants seemingly had no reason to do so. There was no one else in the house, and the Defendants had already shot Plaintiffs' dog with the pepper ball gun; thus, the dogs posed no threat to the officers. Defendants make no argument as to why they released the tear gas into Plaintiffs home. Finally, Wood claims he was forcibly slammed into the hood of a SUV when he was trying to comfort his injured dog while waiting to be transported to the Pierce County Jail. Again, Plaintiff appeared to present no threat of harm to the officers, but instead was simply trying to comfort his pet.

The crime Defendants were investigating, unlawful manufacturing and possession of a controlled substance and possession of a firearm, is a felony. They had reason to believe Plaintiffs could be armed, based on the sounds of gunfire coming from the direction of Plaintiffs' property. However, neither of the Plaintiffs had any criminal history, and Wood did not resist arrest. In fact, he opened his door to his home, allowing the officers to come inside. Defendants immediately handcuffed Wood upon entering the house, therefore eliminating any threat Wood may have posed. Once the officers realized that they secured the residence and that no one else was present, it would be unreasonable to release tear gas into Plaintiffs' residence, even if they were investigating a felony that potentially involved a firearm.

Finding that the Defendants' use of force was unreasonable is only the first step under *Saucier*. Next, the Court must determine whether the constitutional right Defendants violated was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *San Jose Charter of the Hells Angels Motorcycle Club* v. *City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (citing *Saucier*, 533 U.S. at 202). There does not have to be a case specifically holding that the officers' conduct at issue is unconstitutional for the Court to find the constitutional right was clearly established; instead, the law must simply provide the officers with "fair warning" that the conduct was unconstitutional. *Id* at 975

(citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  The law at the time the Defendants acted was sufficiently clear that Defendants knew, or should have known, that "unnecessarily destructive behavior, beyond that necessary to execute [the] warrant effectively, violates the Fourth Amendment." *Id.* at 974 (citing *Liston*, 120 F.3d at 979).

The Court is satisfied that the right Plaintiffs seek to vindicate is a clearly established constitutional right. In *Mena v. City of Simi Valley*, the court affirmed the district court's denial of qualified immunity when the defendants unnecessarily broke down two doors that were unlocked, and one particular officer kicked a door that was already open and said, "I like to destroy these kind of materials, it's cool." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000). Because the Defendants "appear[ed] to have damaged Plaintiff's property in a way that was 'not reasonably necessary to execute [the] search warrant,'" they were not entitled to qualified immunity. *Id.*

Similarly, in this case, taking the facts in the light most favorable to the Plaintiffs, Defendants unnecessarily broke Plaintiffs' window and pried open a door, damaging the surrounding wood, when other officers were already in the house and when the Defendants could have simply opened the door. Additionally, Defendants released some kind of tear gas into Plaintiffs' home which left a white residue on everything, requiring Plaintiffs to throw away anything that was cloth, as the residue could not be cleaned. A reasonable officer would have known that such conduct was unlawful. *See id.*

**E. Reasonableness of the Search Under the Fourth Amendment–Dougil and Halsted**

There is no evidence that Dougil or Halsted engaged in any of the conduct giving rise to Plaintiffs' excessive force claims. The WSP carried out the entire execution of the search warrant; Dougil and Halsted provided only perimeter support. Plaintiffs claim that Dougil and Halsted are directly responsible for the alleged excessive force because they initiated the investigation and were responsible for obtaining the search warrant. Although a defendants can be held liable under § 1983 if he or she sets in motion a "series of acts by others

which the actor knows or reasonably should know would cause others to inflict the constitutional injury," *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986), there was no reason for Dougil and Halsted to know that the WSP would use excessive force in executing the warrant. Therefore, the Court grants Dougil and Halsted qualified immunity on the issue of the reasonableness of the search under the Fourth Amendment.

**F. Fourteenth Amendment Claim–Dougil, Halsted, and WSP**

To state a claim under the Fourteenth Amendment, Plaintiffs must allege that Defendants engaged in conduct that "shocks the conscience," as the Fourteenth Amendment only protects individuals against "arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 846 (1998) (citations omitted). In explaining the types of claims that fail to meet this high standard, the Court has said,

> We have accordingly rejected the lowest common dominator of customary tort liability as any mark of sufficient shocking conduct and have held that the Constitution does not guarantee due care on the part of its officials; liability for negligently inflicted harm is categorically beneath the threshold of the Constitutional due process.

*Id.* at 848–49.

Although Plaintiffs have presented sufficient evidence to support their claim that WSP violated Plaintiffs' constitutional rights in executing the search, Plaintiffs have failed to allege facts that "shock the conscience." *Cf. Rochin v. California*, 342 U.S. 165 (1952) (finding that the forced pumping of a suspect's stomach violated due process). Therefore, Dougil, Halsted, and WSP have qualified immunity with respect to Plaintiffs' Fourteenth Amendment claims. *See Saucier,* 533 U.S. at 201.

/////

////

///

//

ORDER
Page - 16

## IV. CONCLUSION

For the reasons explained above, the Court GRANTS Dougil's and Halsted's Motion for Summary Judgement, Dkt. # 42, and grants them qualified immunity on all of Plaintiffs' claims. The Court GRANTS WSP's Motion for Summary Judgement and Qualified Immunity, Dkt. # 50, with respect to the issue of probable cause in obtaining the warrant and Plaintiffs' Fourteenth Amendment claims, but DENIES the Motion with respect to Plaintiffs' Fourth Amendment claim against WSP.

DATED this 3rd day of May, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE